1

2          UNITED STATES DISTRICT COURT
3          EASTERN DISTRICT OF WASHINGTON

4

5    DAVID S. COURNEYA,                    No.  CV-12-5044-JTR

6          Plaintiff,                      ORDER GRANTING PLAINTIFF'S
                                           MOTION  FOR SUMMARY
7          v.                              JUDGMENT AND DENYING
                                           DEFENDANT'S MOTION FOR
8                                          SUMMARY JUDGMENT
     CAROLYN W. COLVIN,
9    Commissioner of Social Security,[1]

10

11         Defendant.

12

13         **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

14   Nos.  16, 21.   Attorney Thomas A. Bothwell represents Plaintiff; Special Assistant

15   United States Attorney Carol A. Hoch represents the Commissioner of Social

16   Security (Defendant).  The parties have consented to proceed before a magistrate

17   judge. ECF No. 6.  After reviewing the administrative record and the briefs filed

18   by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and

19   **DENIES** Defendant's Motion for Summary Judgment.

20                              **JURISDICTION**

21         On December 24, 2008, Plaintiff filed a Title II application for a period of

22   disability and disability insurance benefits, along with a Title XVI application for

23   supplemental security income, both alleging disability beginning October 7, 2008.

24   Tr. 11.   Plaintiff reported that he could not work due to blackouts, major

25   ───────────────────

26         [1]As of February 14, 2013, Carolyn W. Colvin succeeded Michael J. Astrue

27   as Acting Commissioner of Social Security.  Pursuant to FED. R. CIV. P. 25(d),

     Commissioner Carolyn W. Colvin is substituted as the Defendant, and this lawsuit
28
     proceeds without further action by the parties.  42 U.S.C. § 405(g).

1  depression, suicidal ideations, and an affective disorder.  Tr. 148.  Plaintiff's claim

2  was denied initially and on reconsideration, and he requested a hearing before an

3  administrative law judge (ALJ).  Tr. 69-116.  A hearing was held on December 7,

4  2010, at which vocational expert K. Diane Kramer, and Plaintiff, who was

5  represented by counsel, testified.  Tr. 36-68; 118.  ALJ James W. Sherry presided.

6  Tr. 36.  The ALJ denied benefits on January 7, 2011.  Tr. 11-23.  The instant

7  matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

9  The facts have been presented in the administrative hearing transcript, the

10  ALJ's decision, and the briefs of the parties and thus, they are only briefly

11  summarized here.  At the time of the hearing, Plaintiff was 49 years old, 6'2" tall

12  and weighed 260 pounds.  Tr. 42-43.  He was divorced and living in a studio

13  apartment with a dog.  Tr. 43-44.  He completed the twelfth grade, and spent much

14  of his adult life working as a farm hand.  Tr. 44; 46.  For a brief period, Plaintiff

15  worked in construction.  Tr. 47.

16  In 2001, Plaintiff fell off a haystack and injured his ankle and his leg.  Tr.

17  51.  Plaintiff had surgery on his ankle, but did not have the recommended surgery

18  on his hamstring tendons.  Tr. 51.  Plaintiff said he "stretched" his hamstring so

19  severely that it detached from the muscles, settled on the back of his knee, and it is

20  "about the size of probably a small volleyball."  Tr. 52.  Plaintiff said this causes

21  him significant pain and he can no longer walk properly.  Tr. 52.  Plaintiff said he

22  has lost his confidence, he cannot focus or concentrate and he has "a very difficult

23  time just getting through a basic day."  Tr. 56.

24  Plaintiff testified that he cannot work because he lacks the physical mobility

25  due to his injuries.  Tr. 50.  Additionally, Plaintiff said that he felt he could not

26  work because his mental problems caused him to struggle to concentrate and he is

27  concerned he could not be reliable.  Tr. 50; 57.  Plaintiff said he stopped working

28  in 2008 because his pain was worsening, and he "basically just had a nervous

1 | breakdown." Tr. 58.

2 | ## STANDARD OF REVIEW

3 | In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set
4 | out the standard of review:

5 |
6 | > A district court's order upholding the Commissioner's denial of
   | > benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174
7 | > (9th Cir. 2000). The decision of the Commissioner may be reversed
   | > only if it is not supported by substantial evidence or if it is based on
8 | > legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
9 | > Substantial evidence is defined as being more than a mere scintilla,
   | > but less than a preponderance. *Id.* at 1098. Put another way,
10 | > substantial evidence is such relevant evidence as a reasonable mind
11 | > might accept as adequate to support a conclusion. *Richardson v.*
   | > *Perales, 402 U.S. 389, 401 (1971).* If the evidence is susceptible to
12 | > more than one rational interpretation, the court may not substitute its
13 | > judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097;
   | > *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599
14 | > (9th Cir. 1999).
15 |

16 | The ALJ is responsible for determining credibility, resolving conflicts in
17 | medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035,
18 | 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*,
19 | although deference is owed to a reasonable construction of the applicable statutes.
20 | *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

21 | It is the role of the trier of fact, not this court, to resolve conflicts in
22 | evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one
23 | rational interpretation, the court may not substitute its judgment for that of the
24 | Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579
25 | (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will
26 | still be set aside if the proper legal standards were not applied in weighing the
27 | evidence and making the decision. *Brawner v. Secretary of Health and Human*
28 | *Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to

support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 7, 2008. Tr. 13. At step two, the ALJ found Plaintiff suffered from the severe impairments of morbid obesity; history of dizziness and syncope, intermittent; right ear hearing loss; left hamstring disruption; right ankle/foot pain; major depressive disorder; dysthymia; and alcohol dependence. Tr. 13. At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments. Tr. 15. The ALJ determined that Plaintiff had the residual

1

functional capacity ("RFC") in part:

2
3
4
5
6
7

> To perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he can lift no more than 20 pounds at a time and frequently lift or carry 10 pounds.  He can stand and walk 2 hours out of an 8-hour workday and sit 6 hours out of an 8-hour workday.  …  He can understand/perform simple, routine and repetitive tasks and occasional decision-making and changes in work setting in a low stress job.  He is only capable of superficial contact with the general public and coworkers.

8

9

Tr. 17.

10
11
12
13
14
15
16
17
18

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 21.  At step five, the ALJ noted that Plaintiff's ability to perform work is compromised by "additional limitations."  Tr. 22.  The ALJ concluded, based upon the vocational expert's testimony, that notwithstanding Plaintiff's additional limitations, an individual of a similar age, education, work experience, and residual functional capacity, could perform the requirements of representative occupations such as final assembler, escort vehicle driver, and surveillance system monitor.  Tr. 22.  The ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  Tr. 23.

19

### ISSUES

20
21
22

Plaintiff contends that the ALJ erred by failing to properly assess Plaintiff's credibility and by failing to properly weigh the medical evidence.[2]  ECF No. 17 at 9.

23

### DISCUSSION

24

**A.   Credibility**

25
26

Plaintiff contends that the ALJ erred in finding Plaintiff's testimony was not credible.  ECF No. 17 at 15-18.  The ALJ is responsible for determining

27
28

[2] Plaintiff also argued that the ALJ failed to meet his Step 5 burden, but the court need not reach this issue in light of the overall disposition of the case.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

1  credibility.  *Andrews*, 53 F.3d at 1039.   Unless affirmative evidence exists

2  indicating that the claimant is malingering, the ALJ's reasons for rejecting the

3  claimant's testimony must be "clear and convincing." *Lester v. Chater,* 81 F.3d

4  821, 834 (9th Cir. 1996).    The ALJ's findings must be supported by specific,

5  cogent reasons.   *Rashad v. Sullivan,* 903 F.2d 1229, 1231 (9th Cir. 1990).

6  "General findings are insufficient; rather, the ALJ must identify what testimony is

7  not credible and what evidence undermines the claimant's complaints." *Reddick v.*

8  *Chater,* 157 F.3d 715, 722 (9th Cir. 1998), quoting *Lester*, 81 F.3d at 834.   If

9  objective medical evidence exists of an underlying impairment, the ALJ may not

10  discredit a claimant's testimony as to the severity of symptoms merely because

11  they are unsupported by objective medical evidence.  *See Bunnell v. Sullivan*, 947

12  F.2d 341, 347-48 (9th Cir. 1991).

13      To determine whether the claimant's testimony regarding the severity of the

14  symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques

15  of credibility evaluation, such as the claimant's reputation for lying, prior

16  inconsistent statements concerning the symptoms, and other testimony by the

17  claimant that appears less than candid; (2) unexplained or inadequately explained

18  failure to seek treatment or to follow a prescribed course of treatment; and (3) the

19  claimant's daily activities.  *See, e.g., Fair v. Bowen, 885 F.2d 597, 602-04 (9th Cir.*

20  *1989)*; *Bunnell*, 947 F.2d at 346-47.

21      **1.      Conservative Treatment**

22      First, the ALJ noted Plaintiff had "essentially routine and/or conservative"

23  treatment.  Tr. 18.  This is a proper factor to consider in determining credibility.

24  See *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (ALJ may discount

25  claimant's testimony based on conservative treatment); *Tommasetti v. Astrue*, 533

26  F.3d 1035, 1040 (9th Cir. 2008) (favorable response to conservative treatment

27  undermines reports of disabling pain).

28      However, the record does not support the ALJ's characterizations that

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

Plaintiff received only conservative treatment.  For example, on October 27, 2008, Plaintiff arrived by ambulance to Lourdes Medical Center Hospital because he was planning to shoot himself, jump off a bridge, or crash his car with the intent of killing himself.  Tr. 221.  He was hospitalized for eleven days.  Tr. 287.  This hospitalization was Plaintiff's third psychiatric hospitalization.  Tr. 234.  Inpatient psychiatric hospitalization in order to prevent imminent suicide is not conservative treatment and, thus, this reason provided by the ALJ is not supported by the record. *Cf., Para*, 481 F.3d at 751 ("conservative treatment" consisted of over-the-counter pain medication).

### 2.   Medications effectively controlled symptoms

The ALJ also found that Plaintiff had little credibility because the evidence established that his medications "have been relatively effective in controlling [his] symptoms."  Tr. 18.   As support for this finding, the ALJ cited instances in the record in which Plaintiff indicated he believed a particular medication was working, he felt "fine" on a particular day, a headache had receded, he experienced "only episodes of depression," and Plaintiff's report that he no longer actively wanted to kill himself.  See Tr. 18-20.[3]   Generally, when determining credibility,

---

[3] The ALJ noted the following facts:

(1)   On October 27, 2008, Plaintiff  "had only endorsed symptoms of depression for the past month";

(2)   "[b]y November 6, 2008, [Plaintiff] reported he felt the medication was helping.  His headache was gone, he had less anxiety, he was sleeping better, and he was not having any suicidal thoughts";

(3)   November 8, 2008, Plaintiff was described as having a "'somewhat sad' affect but that he was also "full range and appropriate";

(4)   February 13, 2009, Plaintiff reported he "was beginning to get equalization in his right ear.  Although he complained of dizziness, he also stated 'he thinks he is getting a handle on this'";

an ALJ properly considers whether medication effectively controls the plaintiff's symptoms. *Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled by medication are not deemed disabling). However, when analyzing mental impairments, the ALJ should read individual chart notes "in context of the overall diagnostic picture …." *Holohan v. Massanari,* 246 F.3d 1195, 1205 (9ᵗʰ Cir. 2001). "[The fact that] a person who suffers from . . . anxiety[] and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Id.* Moreover, "[a] single current examination may not always properly describe an individual's sustained ability to function. It should be viewed as one point in time in the longitudinal picture of an individual impairment." *DeLorme v. Sullivan*, 924 F.2d 841, 851 (9th Cir. 1991), quoting SSR 83-15. And, in evaluating whether the claimant satisfies the disability criteria, the ALJ must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a) . "Occasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability." *Lester,* 81 F.3d at 833.

Plaintiff's episodic improvements in his symptoms of depression do not diminish his credibility, but instead reflect the nature of his mental impairment. "[I]t is inherent in psychotic illnesses that periods of remission will occur," and such remission does not mean that the disability has ceased. *Miller v. Heckler,* 756 F.2d 679, 681 n.2 (8th Cir. 1985) (*quoting Dreste v. Heckler*, 741 F.2d 224, 226

---

(5)    August 2009, Plaintiff reported his antidepressant medication was working;

(6)    July 19, 2010, notation indicated Plaintiff said he was "doing fine"; and

(7)    August 2010, Plaintiff reported "only episodes of depression and denied suicide ideation."

See Tr. 18-19.

n.2 (8th Cir. 1984).   "[O]ne characteristic of mental illness is the presence of occasional symptom-free periods." *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996); *see Poulin v. Bowen,* 260 U.S. App. D.C. 142, 817 F.2d 865, 875 (D.C. Cir. 1987).   The course of mental illness can be "extremely difficult to predict," and remissions are of uncertain duration and marked by the impending possibility of relapse.   *Andler,* 100 F.3d at 1393.   Individuals suffering from chronic mental disorders "commonly have their lives structured to minimize stress and reduce their signs and symptoms."   *Andler*, 100 F.3d at 1393, quoting 20 C.F.R. Pt. 404, Subp't P, App. 1 § 12.00(D).   As a result, given the episodic nature of a mental illness, the ALJ improperly relied upon Plaintiff's experience of episodes of depression as a factor that diminished his credibility.

Moreover, the ALJ's characterization that the medication was effective in controlling Plaintiff's symptoms is not supported by the majority of the record.  A careful review of the entire record reveals that over time, Plaintiff's symptoms both improved and worsened.   *See*, e.g., Tr. 329;[4] 326;[5] 507;[6] 554;[7] Tr. 504;[8] 546;[9]

---

[4]11/25/08:  "Patient states that he is still feeling depressed and unmotivated. He has decreased energy … [and] he feels overwhelmed by his situation."

[5]2/20/09: "Patient states that he does not believe that the medication is helping him … he has had intermittent suicidal ideation … his affect was constricted and he appeared depressed."

[6]6/11/09: "Patient states he definitely is better than he has been at times, but he does not feel the way he would like to.  He says he does not feel as though has any spark … he feels as though he has nothing to offer anyone ….   His affect continues to be restricted and he continues to be at least mildly depressed."

[7]8/13/09: "Client states feeling worse …."

[8]10/15/09:   "Patient stated that he was not doing well and he felt that everything was spiraling downward."

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

545,[10] 517.[11]   An ALJ may not consider only those portions of the record that favor his or her ultimate conclusion.  *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting  evidence"); *see also Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (while the ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony," he cannot simply selectively choose evidence in the record that supports his conclusions); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted) .

While Plaintiff experienced brief improvement in his symptoms, the ALJ failed to view the longitudinal record.   As a result, the ALJ's assertion that Plaintiff's symptoms were effectively controlled with medication is not supported by the record.

### 3.   Activities of daily living

Finally, the ALJ concluded that Plaintiff's daily activities undermined his credibility.  The ALJ cited several facts related to Plaintiff's activities of daily living and opined that the activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 20.  The ALJ specifically noted that Plaintiff said he worked on his truck, mowed neighbors' lawns, offered to drive neighbors into town, and he took initial steps to learn to play the banjo. Tr. 19-20.

The record does not support the ALJ's finding that such activities are inconsistent with Plaintiff's allegations about his symptoms.  Notably, the ALJ

[9]11/12/09:  "Client feels frustrated, disappointed and depressed … client was crying .…"

[10]11/13/09:  "Client is still depressed, frustrated and angry."

[11]4/29/10: "His mood is dysthymic … he reports episodes of depression but denies any suicidal ideation."

failed to specify which impairment the cited activities contradict. Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities … does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). Daily activities may form the basis of an adverse credibility determination if: (1) when the activities contradict the claimant's other testimony, and (2) if the activities of daily living meet "the threshold for transferable work skills." *Orn,* 495 F.3d at 639. The ALJ must make specific findings relating to the transferability of Plaintiff's daily activities in order to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn,* 495 F.3d at 639.

In this case, the ALJ failed to make specific findings that explain how Plaintiff's daily activities contradict his other testimony. Additionally, the activities cited by the ALJ are minimal. Plaintiff lived in a trailer park, and the act of watering and mowing a neighbor's lawn,[12] would likely require minimal effort. Also, on June 11, 2009, when Plaintiff told Dr. Zimmerman that he watered the lawns for all the trailers, he also reported he "has a lot of pain" while he is walking "and for three or four hours afterwards." Tr. 507. Significantly, the ALJ failed to make specific findings that these activities meet the threshold for transferable work skills. The ALJ's conclusion that Plaintiff's daily activities undermine his credibility is not supported by the record.

Because the ALJ's reasons related to Plaintiff's credibility are not supported by the evidence, this case must be remanded for a proper determination of credibility.

---

[12]It is not clear from the record whether Plaintiff actually mowed the neighbors' lawn and gave them rides to town. He offered these services, but in response, he was visited by the sheriff who said the neighbors reported Plaintiff was harassing them. Tr. 504.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

**B.      Medical Evidence**

Plaintiff contends that the ALJ erred by giving little weight to the opinions of Laurie Zimmerman, M.D., and Samuel C. Geyer, LMHC.  ECF No. 17 at 11-15. Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Sprague,* 812 F.2d at 1230.  An ALJ may not reject a treating physician's opinion without providing findings that set forth "specific, legitimate reasons" based upon "substantial evidence in the record." *Smolen,* 80 F.3df at 1285; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).   If the treating physician opinion is uncontroverted, the ALJ's reasons for rejecting the opinion must be "clear and convincing."  *Smolen*, 80 F.3d at 1285. Similarly, the opinions of a specialist about medical issues related to his or her area of specialization are given more weight than the opinions of a non-specialist.  *Id.; citing* 20 C.F.R. § 404.1527(d)(5).

### 1.      Laurie Zimmerman, M.D.

Plaintiff argued that the reasons provided by the ALJ for giving little weight to the opinions from Dr. Zimmerman were not supported by the record.  ECF No. 17 at 12.  Laurie Zimmerman, M.D., Plaintiff's treating psychiatrist, saw Plaintiff regularly between November 2008, and July 2010.  Tr. 326-31; 500-07.

On November 29, 2010, Dr. Zimmerman completed a Mental Medical Source Statement form, and assessed Plaintiff with marked[13] limitations in his ability to:  (1) interact appropriately with the general public; (2) accept instructions and respond appropriately to criticism from supervisors; and (3) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. 573.

---

[13]"Marked" was defined as: "seriously affects ability to perform basic work functions on a regular basis."  Tr. 572.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

1   Dr. Zimmerman also assessed Plaintiff with moderate[14] limitations in the
2   ability to (1) understand and remember detailed instructions; (2) carry out detailed
3   instructions; (3) maintain attention and concentration for extended periods; (4)
4   work in coordination with or proximity to others without being distracted by them;
5   (5) complete a normal workday and workweek and to perform at a consistent pace
6   without an unreasonable number and length of rest periods; (6) respond
7   appropriately to changes in the work setting; and (7) set realistic goals or make
8   plans independently of others. Tr. 572-74. Dr. Zimmerman added: "Patient has
9   difficulty with social interactions. He is easily angered. His emotions interfere
10  with his ability to problem solve, follow directions, respond to supervision and get
11  along with others." Tr. 574. During Plaintiff's administrative hearing, the
12  vocational expert opined that if a hypothetical person suffered from all the
13  limitations as assessed by Dr. Zimmerman, the person would be unable to maintain
14  employment. Tr. 65-66.

15      The ALJ gave two reasons for giving little weight to Dr. Zimmerman's
16  opinion: (1) the assessments in the check the box form were "sharply" contrasted
17  by "the far less severe symptoms documented in her contemporaneous chart notes"
18  and supported by "several occasions" on which Dr. Zimmerman noted that
19  Plaintiff "made good eye contact, his affect is less constricted than he had been, his
20  mood is better, and his insight and judgment are fair"; and (2) Plaintiff believed his
21  medications were working, but indicated he was frustrated by health issues that
22  "were being taken care of by various providers." Tr. 21.

23      Contrary to the ALJ's assertion, Dr. Zimmerman's chart notes do not
24  contradict the Mental Medical Source Statement. For example, chart notes reflect
25  Plaintiff's problems with anger and irritability, his frustration, his problems
26  communicating with other people, his loneliness and poor hygiene, and his medical

27  _____
28      [14]"Moderate" was defined as: "functional work impairment between "mild"
    and "marked" limitation." Tr. 572.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

problems.   See Tr. 326-31; 500-06.   As analyzed extensively *supra,* the ALJ's selective choice of chart entries that reflect temporary improvement in Plaintiff's symptoms does not constitute substantial evidence, nor reflect the record as a whole.

Additionally, the ALJ gave "great weight" to the opinions about Plaintiff's mental impairments from non-examining physicians Eugene Kester, M.D., and psychologist Jerry Gardner, Ph.D.   Tr. 20.   However, "the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion."   *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), citing *Magallanes*, 881 F.2d at 752; see also *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) ("The nonexamining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician.").[15]   In sum, the ALJ's rejection of Dr. Zimmerman's opinion was not supported by substantial evidence in the record.

### 2.   Samuel C. Geyer, LMHC

Plaintiff argues that the ALJ's conclusion that Mr. Geyer's opinion conflicted with other evidence was not supported by the record.   ECF No. 17 at 14.

---

[15]"That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."   *Holohan*, 246 F.3d at 1205, citing *Kellough v. Heckler*, 785 F.2d 1147, 1153 (4th Cir. 1986):

> "Feels well" and "normal activity" must be read in context; the claimant has established that she suffered a severe cardiac impairment in 1975.  A note entered in November 1975, just one month before she was hospitalized for open heart surgery, also stated that she "feels well."   Kellough testified without contradiction that her "normal activity" following her surgery was very limited.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

1    Plaintiff also points out that ALJ rejected the opinion in part because it was a one-
2    time examination, yet the ALJ gave "great weight" to the opinions from two
3    physicians who never examined Plaintiff.   ECF No. 17 at 14-15.

4        The ALJ indicated that he gave little weight to Mr. Geyer's opinions set
5    forth in the Psychological/Psychiatric Evaluation completed on October 8, 2009.
6    Tr.  21.  The ALJ noted that while Mr. Geyer was not an acceptable medical
7    source, nevertheless, his observations were considered.  Tr. 21.  However, the ALJ
8    found Mr. Geyer's opinions were not entitled to any significant weight because the
9    opinions were: (1) "not supported by the record as a whole"; (2) based upon a one-
10   time examination; (3) based primarily upon Plaintiff's discredited subjective
11   claims; and (4) "not well supported by clinical or laboratory findings"; and (5) "are
12   inconsistent with the narrative reports."  Tr. 21.

13       Mr. Geyer examined Plaintiff on October 8, 2009, and diagnosed Plaintiff
14   with major depressive disorder, recurrent; PTSD; and generalized anxiety.  Tr. 463.
15   Mr. Geyer assessed Plaintiff with seven marked[16] impairments in his ability to: (1)
16   understand, remember and follow complex (more than two step) instructions; (2)
17   perform routine tasks; (3) relate appropriately to co-workers and supervisors; (4)
18   interact appropriately in public contacts; (5) respond appropriately to and tolerate
19   the pressures and expectations of a normal work setting; (6) care for himself,
20   including personal hygiene and appearance; and (7) maintain appropriate behavior
21   in a work setting.  Tr. 464.  Mr. Geyer observed, "it appears that David has the
22   desire to return to work but at this time his symptoms of depression, anxiety and
23   trauma appear to be overwhelming him.  Mental Health treatment is likely to
24   reduce his symptoms."  Tr. 465.

25       In evaluating the evidence, the ALJ should give more weight to the opinion
26   of an acceptable medical source than that of an "other source."  20 C.F.R. §§

27
28       [16] "Marked" was defined as "very significant interference."  Tr. 464.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

1    404.1527, 416.927.   However, the ALJ is required to "consider observations by

2    non-medical sources as to how an impairment affects a claimant's ability to work."

3    *Sprague,* 812 F.2d at 1232.   An ALJ must give reasons germane to "other source"

4    testimony before discounting it.   *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).

5    In determining the weight to give an opinion from an "unacceptable" source, the

6    ALJ considers: the length of time the source has known the claimant and the

7    number of times and frequency that the source has seen the claimant; the

8    consistency of the source's opinion with other evidence in the record; the relevance

9    of the source's opinion; the quality of the source's explanation of his opinion; and

10   the source's training and expertise.   SSR 06-03p.   Moreover, a medical opinion

11   may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is

12   inadequately supported.   *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1228

13   (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).   It is

14   appropriate to discount lay testimony if it conflicts with medical evidence.   *Vincent*

15   *v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

16        In this case, the ALJ's reasons for discounting Mr. Geyer's opinions can be

17   grouped into three broad categories:   (1) the opinions were "not supported by the

18   record as a whole"; (2) the opinions were "not well supported by clinical or

19   laboratory findings"; and (3) the opinions were "inconsistent with the narrative

20   reports."   Tr. 21.   The ALJ provided no supporting citation, explanation, or

21   examples explaining this conclusion.   When providing reasons for rejecting

22   opinion evidence, the ALJ should provide "a detailed and thorough summary of the

23   facts and conflicting clinical evidence, stating his interpretation thereof, and

24   making findings."   *Reddick*, 157 F.3d at 725.   The ALJ must do more than merely

25   state his conclusions: "[h]e must set forth his own interpretations and explain why

26   they, rather than the doctors', are correct."   *Id.* (*citing Embrey v. Bowen*, 849 F.2d

27   418, 421-22 (9th Cir. 1988)).   The ALJ must explain the weight assigned to "other"

28   sources to the extent that a claimant or subsequent reviewer may follow the ALJ's

1  reasoning.  SSR 06-03p.

2  In this case, the ALJ failed to provide his interpretation of the record as

3  compared with the report from Mr. Geyer.  The ALJ failed to provide specific

4  analysis and details supporting his rejection of the opinion.  In the absence of such

5  reasons, the court is unable to follow the ALJ's reasoning.

6  Additionally, the ALJ indicated that Mr. Geyer's assessment deserved no

7  weight because it was based primarily upon Plaintiff's discredited subjective

8  claims. Tr. 21.  A physician's opinion may be rejected if it is based on a claimant's

9  subjective complaints which were properly discounted.  *Tonapetyan*, 242 F.3d at

10  1149.  However, in this case, the ALJ's determination of Plaintiff's credibility

11  requires remand.  As a result, this reason is invalid.

12  Finally, the ALJ found Mr. Geyer's opinions were not entitled to any

13  significant weight because his opinions were based upon a one-time examination.

14  While length of time of the treating relationship is an appropriate factor to consider

15  in weighing an opinion,[17] reliance upon this factor is untenable in light of the

16  "great weight" the ALJ provided to the non-examining opinions from Drrs. Kester

17  and Gardner (Tr. 20).   An examining physician's opinion is generally entitled to

18  more weight than a non-examining physician's opinion.   *Pitze,* 908 F.2d at 506.

19  In sum, the ALJ's rejection of Mr. Geyer's Psychological/Psychiatric evaluation

20  lacked proper support.  The ALJ's reasons were not specific, valid, nor germane

21  and, thus, the ALJ must reweigh Mr. Geyer's analysis on remand.

22  **CONCLUSION**

23  The court concludes the ALJ's decision is not supported by substantial

24  evidence and is based on legal error.  On remand, the ALJ shall reconsider

25  Plaintiff's credibility and provide valid reasons supported by the record in

26  analyzing Plaintiff's credibility.  Additionally, on remand the ALJ shall reconsider

27  the medical opinions of Dr. Zimmerman and Mr. Geyser and provide proper

28

---

[17]S.S.R. 06-03P.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17

reasons for the weight assigned to the opinions.  Accordingly,

**IT IS ORDERED:**

1.     Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2.     Defendant's Motion for Summary Judgment, **ECF No. 21**, is **DENIED.**

3.     An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Plaintiff and the file shall be CLOSED.

DATED November 12, 2013.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 18